## AMERICAN CYLINDER MANUFAC-TURERS COMMITTEE, Plaintiff-Appellant,

v.

## DEPARTMENT OF TRANSPORTATION, Brock Adams, as Secretary of Transportation, John F. Fearnsides, as Acting Director, Materials Transportation Bureau, Alan I. Roberts, as Acting Director, Office of Hazardous Operation, and Engineering Products of Canada, Ltd., Defendants-Appellees.

No. 544, Docket 77–6172.

United States Court of Appeals, Second Circuit.

Argued Jan. 18, 1978.

Decided April 28, 1978.

Richard E. Schwartz, Washington, D. C. (Collier, Shannon, Rill, Edwards & Scott, William W. Scott, Washington, D. C., and Lord, Day & Lord, New York City, of counsel), for plaintiff-appellant.

Richard N. Papper, Asst. U. S. Atty., S. D. N. Y., New York City (Robert B. Fiske, Jr., U. S. Atty. for the S.D.N.Y., Patrick H. Barth, Asst. U. S. Atty., New York City, of counsel), for defendants-appellees, Dept. of Transp., Adams, Fearnsides and Roberts.

John F. Collins, Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, for defendant-appellee Engineering Products of Canada.

Before MOORE, SMITH and MANSFIELD, Circuit Judges.

MOORE, Circuit Judge:

Plaintiff, the American Cylinder Manufacturers Committee ("ACMC"), an unincorporated domestic trade association, appeals the district court's decision that defendants, the Department of Transportation ("DOT") and its officials, can grant approval to foreign manufacturers to have compressed gas cylinders analyzed and tested outside the United States without public participation. We affirm.

Since 1922, federal regulations have governed the manufacture and transportation of compressed gas cylinders used in interstate commerce. Initially, the Interstate Commerce Commission enforced the applicable federal regulations. In 1967, the regulatory authority was transferred to the then-newly-created DOT. 49 U.S.C. § 1655. Under the regulations then (and now) in effect, all cylinders used in domestic commerce must be inspected, tested, and chemically analyzed to determine whether they satisfy cylinder specifications designed to ensure the public safety.

Prior to 1976, all cylinders had to be tested and analyzed within the United States (though the rule did not specify who was to perform the tests). This "domestic test and analysis rule", as it came to be known, was intended to protect American citizens against the dangers of cylinders of uncertain "pedigree". 41 Fed.Reg. 18412 (May 4, 1976). Unlike testing and analysis, however, the *inspection* of cylinders could be performed abroad: high-pressure cylinders had to be inspected by "disinterested inspectors"—*i. e.,* persons not employed by the manufacturer; low-pressure cylinders could be inspected by employees of the manufacturer.

In 1971, the Material Transportation Bureau, an agency of DOT authorized to promulgate regulations in this area, initiated rule-making proceedings by publication of notice, 36 Fed.Reg. 838 (Jan. 19, 1971), to the effect that a change in the "domestic test rule" was being contemplated. In 1976, after extensive proceedings in which

ACMC actively participated, a new rule was promulgated. The rule allows DOT-approved foreign manufacturers to test and analyze their cylinders outside of the United States. In addition, the rule requires that domestically-made high-pressure cylinders and foreign-made high- and low-pressure cylinders be subjected to inspection by DOT-approved independent inspection agencies. Thus, under the post-1976 rules, *all*—not just high-pressure—foreign-made cylinders, are subject to independent inspection, and independent inspectors, both foreign and domestic, must be approved by DOT. 49 C.F.R. § 173.300a; 41 Fed.Reg. 18414.

Under the new regulations, a foreign manufacturer seeking to conduct tests and analyses outside the United States must submit detailed information concerning its facilities and its cylinders, and it must identify its independent inspection agency, permit inspection of its manufacturing and testing facilities, and provide materials for independent analyses and tests upon request. If, on the basis of such information and investigation, DOT determines that the manufacturer can satisfy performance standards, then approval will be granted. 49 C.F.R. § 173.300b; 41 Fed.Reg. 18413. Application for approval by both inspectors and manufacturers is made to the Office of Hazardous Materials Operations ("OHMO"), a subagency of DOT charged with enforcing the regulations for the transportation of hazardous materials.

Pursuant to the 1976 amendments and the procedures promulgated thereunder, 49 C.F.R. § 173.300a and b, OHMO, on August 31, 1977, issued an "approval" for nondomestic testing and analysis to Engineering Products of Canada, Ltd. ("EPC"), a Canadian manufacturer of gas cylinders, and an "approval" to Warnock Hersey Professional Services, Ltd., EPC's independent inspection agency. In September 1977, OHMO issued approvals to another manufacturer and its independent inspection agency. OHMO is presently considering applications for other approvals. This has led to the instant suit.

ACMC brought this action seeking declaratory and injunctive relief: it asks that the approval of EPC's nondomestic testing, and all similar approvals of foreign manufacturers and inspection agencies, be declared void; and that DOT be enjoined from issuing any further approvals unless notice and an opportunity for public comment is first provided. After a trial on the merits, District Judge Pollack denied relief, finding that neither notice nor a hearing was required under the Administrative Procedure Act, 5 U.S.C. § 558(c), or under the Hazardous Materials Transportation Act of 1974 ("HMTA"), 49 U.S.C. § 1801 *et seq.*, DOT's enabling statute.

On appeal, ACMC argues that DOT approvals are, in effect, "licenses" to analyze, test, or inspect cylinders outside of the United States. These "licenses", it is contended, serve to enforce compliance with DOT's safety regulations and are, therefore, like compliance orders, the issuance of which, under 49 U.S.C. § 1808(a), must be preceded by notice and an opportunity for public comment. ACMC argues that, though the approval or license procedures may have been validly enacted under DOT's rule-making authority, HMTA § 1804(a), the *implementation* of the procedures can only be justified under § 1808(a), which as noted, requires an opportunity for public comment before a compliance order is issued.

As did the district court, we assume ACMC's standing to raise its claims, though it is somewhat doubtful that ACMC's status as a competitor of the foreign manufacturers constitutes a sufficient predicate on which its standing can be upheld. Assuming standing, however, we affirm on the merits.

■ We reject ACMC's contention that, if the approval procedure is valid at all, it is only so under § 1808(a). As the district court noted, § 1808(a), which is reproduced in the margin,[1] deals only with "orders di-

---

1. 49 U.S.C. § 1808(a) provides:
   (a) The Secretary is authorized, to the extent necessary to carry out his responsibil-

ities under this chapter, to conduct investigations, make reports, issue subpoenas, conduct hearings, require the production of rele-

recting compliance", which are intended as a sanction for past violations of DOT regulations. DOT decisions to grant or withhold approvals, on the other hand, involve determinations whether cylinder specifications can be met in the first instance. They are, in effect, mechanisms designed to *effectuate* the safety standards promulgated by DOT. Thus, they do not fall within the ambit of § 1808(a).

◼ We disagree with appellant's contention that the procedures now contested cannot be justified under DOT's general rulemaking powers granted in § 1804(a),[2] for, as we see it, the procedures reflect merely a method for policing the regulations lawfully adopted under that provision. We believe that ACMC's repeated claims that such procedures involve "licensing" are an exaltation of form over substance.

When one studies the substance of the 1976 rules and their genesis, it becomes apparent that, though the "approval" procedure may appear on the surface to fall within the broad definition of "licensing" under the Administrative Procedure Act, 5 U.S.C. §§ 551(8), (9), in reality the procedure involves the performance by DOT of a skilled, but essentially pro forma, act—*i. e.,* determining whether, on the face of an application, a foreign manufacturer has shown the capability for meeting specifications relating to testing and analysis. That the procedure serves this limited function

can be seen from its origin: proceedings for changing the nearly fifty-year-old "domestic test and analysis rule" were begun in 1971 in response to the realization that, with the advancements being made in the industry's technology, and with the advent of speedy travel and communication systems, thus facilitating the worldwide exchange of scientific information, it would no longer be realistic to assume that our neighbors in Canada, and perhaps elsewhere, did not have the technological capacity to manufacture, test, and analyze cylinders in accordance with DOT specifications. *See* 41 Fed.Reg. 18412–13.[3] Hence, DOT promulgated the rule that, upon submission of an application indicating that a foreign manufacturer had the requisite competence to meet safety requirements, testing need not be conducted in the United States. The new rule puts to rest the anachronistic presumption that only domestic manufacturers, such as the members of ACMC, can satisfy DOT's requirements.

◼ With the removal of the presumption, a method had to be devised, of course, to determine which manufacturers possessed the capacity to meet specifications, and which did not. Thus, DOT created a procedure inviting foreign manufacturers to submit information and requiring them to permit, as well as finance, DOT inspections. It would be strange indeed if DOT,

---

vant documents, records, and property, take depositions, and conduct, directly or indirectly, research, development, demonstration, and training activities. The Secretary is further authorized, after notice and an opportunity for a hearing, to issue orders directing compliance with this chapter or regulations issued under this chapter; the district courts of the United States shall have jurisdiction, upon *petition by the Attorney General, to* enforce such orders by appropriate means.

2. 49 U.S.C. § 1804(a) provides:
   (a) The Secretary may issue . . . *regulations for the safe transportation in com*merce of hazardous materials. Such regulations shall be applicable to any person who transports, or causes to be transported or shipped, a hazardous material, or who manufactures, . . . repairs, or tests a package or container which is represented, mark-

ed, certified, or sold by such person for use in the transportation in commerce of certain hazardous materials. Such regulations may govern any safety aspect . . . which the Secretary *deems necessary or appropri*ate, including, but not limited to, the packing, . . . handling, labeling, marking, . . . and routing . . . of hazardous materials, and the manufacture, . . . [and] testing of a package or container . . . . .

3. Furthermore, under the old "domestic" rule, because of the cost, inconvenience, and delay it imposed with respect to foreign manufacturers, such manufacturers were almost completely excluded from the American market, in effect making DOT a *de facto* regulator of foreign commerce—a power well outside DOT's Congressional mandate. *See 41 Fed.Reg. 18413.*

while charged with the duty of protecting the American public from the dangers of transporting hazardous substances, was permitted to make regulations in conformance with the industry's capabilities, but was denied the power to administer the regulations which properly and validly carry out this charge. We believe, as the Supreme Court has stated, that "administrative agencies and administrators [are] familiar with the industries which they regulate and [are] in a better position than federal courts or Congress itself to design procedural rules adapted to the peculiarities of the industry and the tasks of the agency involved". *FCC v. Schreiber,* 381 U.S. 279, 290, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965). Common sense dictates that, in a case such as this, the agency must also have the authority to oversee the application of its regulations. As Judge Friendly has put it, "Congress

could hardly have intended to deprive [this] agenc[y] of [its] ability to administer." *WBEN, Inc. v. United States,* 396 F.2d 601, 617 (2d Cir.), *cert. denied,* 393 U.S. 914, 89 S.Ct. 238, 21 L.Ed.2d 200 (1968).

Indeed, the statutory scheme of HMTA, when considered as a whole, indicates quite clearly that Congress fully intended to provide DOT with the authority to police its regulations in order to assure the public safety, and to oversee the manufacturers in the industry without the necessity of resorting to the harsh sanction of a compliance order, § 1808(a) [4] and without the intervention of competitors in the industry. Only when DOT finds violations, or permits a manufacturer an exemption from the exacting specifications otherwise applicable, § 1806,[5] is the public given an opportunity to participate under the statutes. Thus, under § 1805 [6] of HMTA, DOT, without

---

**4.** *See* n. 1, *supra.*

**5.** 49 U.S.C. § 1806(a) provides:

(a) The Secretary, in accordance with procedures prescribed by regulation, is authorized to issue or renew, to any person subject to the requirements of this chapter, an exemption from the provisions of this chapter, and from regulations issued under section 1804 of this title, if such person transports or causes to be transported or shipped hazardous materials in a manner so as to achieve a level of safety (1) which is equal to or exceeds that level of safety which would be required in the absence of such exemption, or (2) which would be consistent with the public interest and the policy of this chapter in the event there is no existing level of safety established. . . . Each person applying for such an exemption or renewal shall, upon application, provide a safety analysis as prescribed by the Secretary to justify the grant of such exemption. A notice of an application for issuance or renewal of such exemption shall be published in the Federal Register. The Secretary shall afford access to any such safety analysis and an opportunity for public comment on any such application . . . .

**6.** Section 1805 gives the Secretary broad powers, as follows:

(a) The Secretary is authorized to establish criteria for handling hazardous materials. Such criteria may include, but need not be limited to, a minimum number of personnel; a minimum level of training and qualification for such personnel; type and frequency of inspection; equipment to be used for detec-

tion, warning, and control of risks posed by such materials; specifications regarding the use of equipment and facilities used in the handling and transportation of such materials; and a system of monitoring safety assurance procedures for the transportation of such materials. The Secretary may revise such criteria as required.

(b) Each person who transports or causes to be transported or shipped in commerce hazardous materials or who manufactures . . . or tests packages or containers which are represented, marked, certified, or sold by such person for use in the transportation in commerce of certain hazardous materials (designated by the Secretary) may be required by the Secretary to prepare and submit to the Secretary a registration statement not more often than once every 2 years. Such a registration statement shall include, but need not be limited to, such person's name; principal place of business; the location of each activity handling such hazardous materials; a complete list of all such hazardous materials handled; and an averment that such person is in compliance with all applicable criteria established under subsection (a) of this section. The Secretary shall by regulation prescribe the form of any such statement and the information required to be included. The Secretary shall make any registration statement filed pursuant to this subsection available for inspection by any person . . . .

(c) No person required to file a registration statement under subsection (b) of this section may transport or cause to be transported or shipped hazardous materials, or manufacture

holding public hearings, is given the authority to set minimum levels and to establish criteria for the type and frequency of inspections. Furthermore, § 1805 expressly authorizes the Secretary to establish "a system of monitoring safety assurance procedures . . . ." And, under § 1805, DOT may require that *any* manufacturer submit a registration statement providing information to indicate that its requirements are met. Furthermore, DOT is authorized to conduct inspections to determine whether individuals are complying with its regulations. HMTA § 1808(a). *See* note 1, *supra.* Appellant's position would imply that DOT cannot carry out its functions under these provisions without the aid of others in the industry who are not charged with the public duty. A decision by DOT that a manufacturer *has* met specifications, which is the function of an approval, does not implicate a *lowering* of standards that must be met by a manufacturer, which is a situation about which the public might reasonably be concerned. Indeed, we perceive little difference between DOT's function in granting "approvals" and its function to receive registration statements and monitor procedures under § 1805.

To hold, as ACMC would have us do, that its members should be permitted to oversee DOT in accepting and approving applications submitted by foreign manufacturers would be to involve an applicant's competitors in the day-to-day administration of DOT's regulations vis-a-vis that applicant. Such involvement is not only unrequired by the statutes and regulations, but it is unwise as well. The public duty lies with DOT, not with ACMC—and it must be presumed that that agency will carry forth its duties with the skills and expertise it possesses. It has not been alleged that DOT has failed in its duty, nor that unsafe foreign cylinders are entering or will enter the country because of the new rule. The public interest will not be well served by needlessly prolonging agency proceedings and adding unnecessary costs to the implementation of DOT's procedures created to meet

the changing needs of the industry, especially where, as in this case, there is no threat to the public safety. We thus hold that DOT may conduct its business in this regard without being required to accept ACMC's assistance.

The decision of the district court is affirmed.

---

. . . or test packages or containers for use in the transportation of hazardous materials, unless he has on file a registration statement.